The VALUE GROUP, INC., a corporation organized in accordance with the laws of New Jersey, and Stern–Ring Associates, a partnership, Plaintiffs,

v.

MENDHAM LAKE ESTATES, L.P., A New Jersey Limited Partnership, Michael Miller, John Doe (a fictitious name) and Mary Roe (a fictitious name), as partners, agents and individuals in active concert with the other defendants, and Gerald Novak, Defendants.

Civ. A. No. 92–2758(WGB).

United States District Court,
D. New Jersey.

Sept. 4, 1992.

Klein Chapman by Christopher J. McHattie, Clifton, N.J., for Value Group, Inc. and Stern–Ring Associates.

Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, P.C. by Michael J. Melillo, West Orange, N.J., for Mendham Lake Estates.

BASSLER, District Judge:

A copyright owner of architectural plans seeks to enjoin the completion of a single family residence being built according to plans that infringe the copyright. For the following reasons, the plaintiff's application for a temporary restraining order is granted.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. BACKGROUND

This is an application for a temporary restraining order brought by The Value Group, Inc. and its architect, Stern–Ring Associates (collectively referred to as "Value Group" or "plaintiffs") against a competitor, Mendham Lake Estates ("Mendham Lake"). The plaintiffs seek relief under The Copyright Act of 1946 ("the Act") (17 U.S.C., § 101 et seq.); as amended by, *inter alia*, the Berne Convention Imple-

mentation Act of 1988 ("the 1988 Act") and the Copyright Infringement Act of 1990 ("the 1990 Act").[1]

Value Group is in the real estate development business, primarily building single family housing in Morris County, New Jersey. Stern–Ring is in the architectural services business, providing architectural plans to Value Group. Value Group and Mendham Lake both specialize in luxury homes in the $450,000 to $600,000 range. Value Group identifies Mendham Lake as its sole competitor in the geographical area and seeks to enjoin Mendham Lake from using a housing design Value Group claims Mendham Lake copied from a design created by Stern–Ring for Value Group.

From approximately September 1990 through January 1991, Value Group designed certain architectural plans for single family residences, designated Estate House I and Estate House II ("the Architectural Plans"). These architectural plans and the related sales brochures created to market the homes were copyrighted under Title 17 of the United States Code on June 17, 1992. *See* exhibit A–E of the Abramson Certification ("Copyright Certificate").

In January 1992, construction of a first house to be built based upon the Architectural Plans was begun in a development known as Rickland Estates, located in Randolph, New Jersey. That house was completed in May or June 1992 and is the subject matter of the Copyright Certificate.

In early May 1992, Mr. Stern, of Stern–Ring Associates, was contacted by Mr. Gerald Novak ("Novak"), a representative of Mendham Lake. Novak indicated he was interested in obtaining a copy of the Architectural Plans for his use in connection with a Mendham Lake's project in Randolph, New Jersey. Novak did not mention that his interest in the design was for his new clients, Mr. & Mrs. Charles Lane. Value Group had previously rejected the Lanes' request to build a house based on the Estate Plan I Plans in Rickland Estate because a similar house would impair the integrity of the development and violate the municipal "look alike" ordinance.

Stern told Novak that the Architectural Plans were not available for Mendham Lake's use in Randolph because they would compete with, and adversely impact on, Value Group's Randolph project. Stern told Novak that he would prepare alternative plans, not related to the plans he prepared for Value Group. Stern advised Andrew Abramson, the President of Value Group, of the conversation he had with Novak.

Abramson and Stern, on May 8 and 12, wrote to Mendham Lake, reiterating that Value Group owned the Architectural Plans. Mendham Lake responded that it intended to proceed with the house for the Lanes, contending it had derived a new design through modification and a total redrawing of the Architectural Plans.[2]

The plaintiffs learned that in late May the defendants had filed a building permit on behalf of the Lanes, together with supporting architectural plans and drawings, which the plaintiffs found were virtually identical to their Architectural Plans. Consequently, the plaintiffs filed a complaint alleging copyright infringement, conversion, unjust enrichment, unfair competition and tortious interference. In response to plaintiffs' simultaneous application for a temporary restraining order, defendants denied any copyright infringement and challenged the court's authority to issue an

---

**1.** Prior to the 1990 Act, architectural works were not protected as a copyrightable matter. The purpose of the 1990 Act was to bring the United States in full compliance with its multilateral treaty obligations as specified by the Berne Convention. The 1990 Act created a new category of copyrightable authorship: architectural works.

**2.** The defendants' sales brochure invites clients to copy competitors' designs:

The preliminary process begins once the prospect makes the decision to live in Mendham Lake Estates. The preliminary budget can be quickly calculated after the prospect selects one of the numerous plans offered or provides their own plans. *It is encouraged that a prospect visit the numerous housing communities in the area and select the style of home which best meets their needs and then supply the developer with a brochure showing the model which is closest to meeting their needs* ... (emphasis added).

injunction precluding the further construction of a single family house.

## II. DISCUSSION

### A. *The Standard for Preliminary Injunctions*

It is fundamental that "the purpose of a[n] interlocutory injunction is to preserve the status quo to protect the respective rights of the parties pending determination on the merits." *Cordis Corp. v. Medtronic, Inc.,* 780 F.2d 991, 994 (Fed.Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986); *see also, Smith International, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1578 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Four factors are weighed: (1) the likelihood of success on the merits after a full hearing; (2) whether the movant will be irreparably injured without the restraint; (3) whether the party to be enjoined will be irreparably injured if the preliminary relief is granted; and (4) whether the public interest will be served by the preliminary relief. *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 191–192 (3d Cir. 1990). The court must balance these factors in deciding whether to issue a preliminary injunction. *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir.1982) (in banc). As explained below, all of these factors favor the plaintiff's application to enjoin further infringement of their copyrights.

### B. *Subject Matter*

Architectural works and pictorial, graphic and sculptural works are all protected by copyright. 17 U.S.C. § 102(a)(5) and (8). Plaintiff's architectural plans and drawings, and the architectural work based on those plans and drawings, are expressly included in the definitions in 17 U.S.C. § 101, which provides, inter alia:

An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

A pictorial, graphic and sculptural work[3] includes two-dimensional and three-dimensional works of fine, graphic and applied art ... diagrams ... and technical drawings, including architectural plans.

Works falling within these definitions are expressly protected by 17 U.S.C. § 102(a):

Copyright protection subsists in, in accordance with this title, original work of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

(5) pictorial, graphic, and sculptural works,;

(8) architectural works.[4]

A copyright owner is granted exclusive rights in the copyrighted work pursuant to 17 U.S.C. § 106. 17 U.S.C. §§ 107–120 provide that the owner of the copyright has the exclusive right to authorize the reproduction of the copyrighted work, the preparation of derivative works based on the copyrighted work, and the displaying of the copyrighted work publicly.

17 U.S.C. § 501 provides that anyone who violates any of the exclusive rights of the copyright owner is an infringer. 17 U.S.C. § 502 provides that any court having jurisdiction of a civil action arising un-

---

**3.** *See, Eales v. Envtl. Lifestyles, Inc.,* 958 F.2d 876 (9th Cir.1992), and cases cited therein, which indicate that architectural plans and drawings for a single family house are accorded full and complete protection under 17 U.S.C. § 102(a)(5). *See also, Imperial Homes Corp. v. Lamont,* 458 F.2d 895, 899 (5th Cir.1972), holding that copying of floor plans from a copyrighted brochure constitutes copyright infringement.

**4.** Significantly for this case, the category of architectural works was added with the passage of the 1990 Act. Therefore, architectural works are given "full" protection under the law.

der this title may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

#### C. Likelihood of Success on the Merits

■ Value Group is likely to succeed on the merits of the copyright infringement count. To succeed on a claim of copyright infringement, a plaintiff must show: (1) ownership of a valid copyright and (2) copying by a defendant. *Midway Mfg. Co. v. Bandai–America, Inc., et al.*, 546 F.Supp. 125, 138 (D.N.J.1982), *aff'd*, 775 F.2d 70 (3d Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citing *Franklin Mint Corp. v. National Wildlife Art Exch., Inc.*, 575 F.2d 62, 64 (3d Cir.), *cert. denied*, 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193 (1978)). The movant must show a "reasonable probability of eventual success in the litigation." *In re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1147 (3d Cir.1982). *See also Constructors Ass'ns of W. Pa. v. Kreps*, 573 F.2d 811 (3d Cir.1978).

#### 1. Ownership of a Valid Copyright

■ There is no reason to believe that the Copyright Certificates provided by the plaintiff are invalid. These certificates constitute prima facie evidence of copyright validity and ownership. *Midway Mfg.*, 546 F.Supp. at 139.[5]

■ Even when valid certificates exist, however, an architectural work must exhibit some modicum of creativity before it is eligible for copyright protection. This requirement for creativity is delineated by the Supreme Court in *Feist Publications,*

*Inc. v. Rural Telephone Service Co.*, —— U.S. ——, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The Court stated that "original," as the term is used in copyright, "means only that the work was independently created by the author ... and that it possesses a minimal degree of creativity." *Id.* at ——, 111 S.Ct. at 1287. The requisite level of creativity is extremely low, even a small amount will suffice. *Id.* The vast majority of works qualify quite easily, as they possess some creative spark, no matter how crude, humble, or obvious it might be. *Id.*

■ Value Group has copyrighted architectural plans as well as a brochure depicting these plans. At a minimum, the basic floor plans and general external appearance qualify under the latitudinarian standard enunciated by the *Feist* court. Although Value Group cannot prevent anyone from innocently building a similar house, it can prevent anyone from deliberately copying the originality of its plans.[6] While originality of work is one element of copyright validity, the copyright certificate itself provides prima facie evidence of some originality. *Midway Mfg. Co.*, 546 F.Supp. at 139.

#### 2. Copying of Value Group's Copyrighted Works

■ Because copying can often be difficult to establish directly, it can also be established with circumstantial evidence by showing that the defendant had access to the work and the alleged infringing work is "substantially similar" to the copyrighted work. *Franklin Mint*, 575 F.2d at 64. A photocopy of Value Group's brochure, depicting the alleged infringing design, was

---

**5.** The defendants argue that the absence of the copyright symbol (a circled lower case "c") on the published version of plaintiffs' copyrighted brochures precludes the relief sought by plaintiffs. Section 401 of the Act, which once required the inclusion of the copyright symbol on all published versions of a copyrighted work, was amended effective March 1, 1988 to eliminate that requirement. *See generally,* M. Nimmer & D. Nimmer, *Copyright,* § 7.02[B] & [C][3] (Supp.1992). ("Nimmer")

**6.** *See generally,* 17 U.S.C. § 101 which states that copyright protection coverage does not extend

to individual standard features. As long as an object embodies originality, copyright protection will not be displaced by the fact that the design was embodied in a "useful article." *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). A "useful Article" has an intrinsic utilitarian function that is not merely to portray the appearance of the article. For example, a window is a useful article and therefore, cannot be copyrighted. However, a design on a window in not a "useful" article and can be copyrighted.

attached to the sales contract between Mendham Lake and the Lanes (the purchasers of the defendant's alleged infringing structure). The Copyright Act provides that the copyright proprietor holds the exclusive right to prepare derivative works based on the copyrighted work. 17 U.S.C. § 106(2); *see also Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255 (5th Cir.1988); *Lone Ranger Television, Inc., v. Program Radio Corp.* 740 F.2d 718 (9th Cir.1984); and *Midway Mfg. Co. v. Artic Intern.*, 704 F.2d 1009 (7th Cir.), *cert. denied*, 464 U.S. 823, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983). Pursuant to the Act and the decisions interpreting the Act, Value Group possesses the exclusive right to prepare derivative works based on its copyrighted materials, specifically, the Estate House I.

The Copyright Act defines a derivative work as "a work based upon one or more pre-existing works, such as ... an abridgement, condensation or any other form in which a work may be recast, transformed or adapted. A work consisting of editorial provisions, annotations, elaborations or other modifications, which as a whole, represent an original work of authorship...." 17 U.S.C. § 101. A derivative work is one that "would be considered an infringing work if the material which it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work." *Peter Pan Fabrics v. Rosstex Fabrics*, 733 F.Supp. 174, 176 (S.D.N.Y.1990) (citing *Nimmer*, § 3.01).

Mendham Lake admits using the photocopy to prepare its architectural design. The photocopy attached to Mendham Lake's sales contract is a derivative work because the pre-existing work from which it was derived was taken without the consent of the copyright proprietor of such pre-existing work.[7] Clearly, not only access to, but use of, a copyrighted material is established.

In determining whether a work is substantially similar, the court should "record [its] impressions as they would appear to a layperson viewing the [works] side by side ... [and] concentrate upon the gross features rather than an examination of the minutiae." *Midway Mfg.*, 546 F.Supp. at 138, (citing *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 908–909 (3d Cir.) *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975)). Substantial similarity does not require identity; sufficient similarity is found where the work is recognizable by the ordinary observer as having been taken from the copyrighted source. *Robert R. Jones Associates, Inc. v. Nino Homes et al.*, 686 F.Supp. 160, 162 (E.D.Mich.1987), *aff'd in part and rev'd in part*, 858 F.2d 274 (6th Cir.1988).

When viewing Value Group's and Mendham Lake's plans side by side, there is no question that the plans are "substantially similar." Since the standard for originality and therefore copyrightability is so low, copying the floor plan alone infringes the copyright. Additionally, many of the details on each set of plans are exactly the same. For example, the placement, design, and size of many windows are identical. Based upon application of the *Midway* standard, the two sets of plans are "substantially similar."

In conclusion, Value Group has demonstrated a high probability of success with respect to its copyright infringement claim: There is prima facie evidence of a valid copyright, and evidence that Mendham Lake has used Value Group's copyrighted material in preparing the plans of the house it is building for the Lanes.

### D. Probability of Irreparable Harm

The moving party carries the burden of showing irreparable harm. *Oburn v. Shapp*, 521 F.2d 142, 150 (3d Cir.1975) and must make a clear showing of irreparable injury. *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, 493 U.S.

---

**7.** I also note that Mendham Lake's brochure encourages its prospective home buyers to visit housing communities in the area, select a design from one of those communities, and then sup-

ply it with a brochure showing the selected design so that it can build that house for its prospective purchaser.

848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). But "a showing of a *prima facie* case of copyright infringement or reasonable likelihood of success on the merits raises a presumption of irreparable harm ... and the copyright plaintiff is entitled to a preliminary injunction without a detailed showing of irreparable harm." *Apple Computer, Inc. v. Franklin Computer Corporation,* 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984) (citing *Nimmer,* § 14.06[A], at 14–50, 14–51 & n. 16); *see also Demetriades v. Kaufmann,* 680 F.Supp. 658, 662 (S.D.N.Y.1988) ("once the moving party has established a *prima facie* claim of copyright infringement, irreparable injury is presumed") (citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985)).

In *Educational Testing Services v. Katzman,* 793 F.2d 533–44 (3d Cir.1986), the court affirmed a preliminary injunction on a copyright claim. The movant established a *prima facie* case and the adverse party did not rebut the presumption. *Id.* The court noted that the copied materials were essential to the movant's operation and there was adequate evidence of expenditure of significant time, effort, and money directed to production of the copyrighted material.

Value Group has spent significant time, effort, and money in developing these plans. It would be a grave injustice to permit a competitor to profit from another competitor's hard work and injure that competitor simultaneously. The jeopardy to investment and competitive position caused by the copying satisfies the requirement of irreparable harm needed to support a preliminary injunction. *Apple Computer,* 714 F.2d at 1254. Value Group's investment warrants the same presumption of irreparable harm that applied in *Educational Testing* and *Apple Computer.*

■ In addition to this presumed irreparable injury, it is clear that the Value Group plaintiffs will also suffer actual irreparable injury if an infringing structure is built in Mendham Lake's competing housing development. Defendants' development provides the only real competition in the same market for the same customers—those seeking to purchase a new home in the $450,000 to $650,000 range. Once a particular architectural design is utilized in competing communities, the viability of that design, and, in fact, of the project itself, becomes doubtful. The public perceives a duplicate design as commonplace and less desirable. Given the fact that Mendham Lake is the plaintiff's only direct competition, this effect could be devastating to a project in this economy. This "jeopardy to investment and competitive position caused by the copying satisfies the requirement of irreparable harm needed to support a preliminary injunction." *Apple Computer,* 714 F.2d at 1254.

Given the presumption of irreparable harm, the possibility of actual injury, and the substantial investment expended, the plaintiffs have satisfied the requirement of irreparable injury.

### E. Whether The Public Interest Will Be Served

■ The public has no interest in permitting one company to copy another company's work. Congress in the 1990 Act has elected to grant certain exclusive rights to the owner of a copyright in a protected work, including architectural works. The public interest will be served by upholding the copyright protection, and preventing the pirating of creative energies and resources that are invested in protected works. *Apple Computer,* 714 F.2d at 1254.

Several months have been spent preparing the plans that the Value Group has copyrighted. In addition, extensive monies have been invested in the development of the project. The public has no interest in seeing these efforts wasted by allowing a competitor to infringe upon copyrighted plans. The public interest is served by implementing the intent of Congress and issuing the preliminary injunction.

### F. Balancing The Hardships

■ A court should not consider a balancing of hardships as a determining factor

in granting injunctive relief in a copyright matter. *Apple Computer*, 714 F.2d at 1255. Allowing for a balancing of hardships would permit a knowing infringer to construct its entire business around infringement. *Id.*

Assuming, arguendo, that the hardships are balanced, this court is hard put to imagine any legitimate injury that will be suffered by the defendants if the relief requested by the plaintiffs is granted as the house is only in the preliminary construction stage.

CONCLUSION

In conclusion, this court determines that the Copyright Infringement Act of 1990 entitles Value Group to a temporary restraining order against Mendham Lake Estates, L.P., Michael Miller (General Partner of Mendham Lake Estates), and Gerald Novak, enjoining the construction of a house that would infringe plaintiffs' copyrighted architectural work,[8] and their further use, modification, or copying of plaintiffs' copyrighted architectural designs.[9]

---

**8.** Even prior to the expressed copyright protection for architectural works afforded by the 1990 Act, courts found ways to enjoin construction of a building based upon infringing plans. In *Demetriades v. Kaufmann,* 690 F.Supp. 289, 295 (S.D.N.Y.1988), the court refused to directly enjoin construction, but ordered impoundment of the copyrighted plans. The impoundment of the plans was tantamount to enjoining construc-tion. The 1990 Act would now permit the courts to enjoin construction of the building itself.

**9.** Subsequent to this issuance of a temporary restraining order and prior to preliminary hearing, defendants consented to the entry of a preliminary injunction.