**Corky BALLAS, Plaintiff,**

v.

**Gennaro TEDESCO and Ballroom Blitz Music, Inc., Defendants.**

No. Civ.A. 98–5686.

United States District Court, D. New Jersey.

March 5, 1999.

Evan A. Blaker, Feldman & Hilderbrand, P.C., Cherry Hill, NJ, for plaintiff.

Christopher J. Franklin, Mendham, NJ, Co–counsel, Wallace Collins, Stein & Stein, New York City, for defendant.

## OPINION

GREENAWAY, District Judge.

■ This matter comes before the Court on Plaintiff Corky Ballas' ("Plaintiff") motion to remand this matter to the Superior Court of New Jersey or alternatively to dismiss pursuant to Fed.R.Civ.P. 12(b)(1).[1] Also before the Court is Defendants Gennaro Tedesco's and Ballroom Blitz Music's (collectively "Defendants") motion seeking (1) a temporary restraining order, (2) a preliminary injunction and (3) to vacate the December 11, 1998, order of the Superior Court of New Jersey.[2] This Court heard oral argument on those motions on January 29, 1999.[3] For the reasons stated below, Plaintiff's motion to remand is denied. Defendants' motion for a temporary restraining order is granted. Also, Defendants' motion to vacate the order of the Superior Court of New Jersey is granted.

### FACTS

Plaintiff and his wife are competitors in DanceSport, commonly known as ballroom dancing. Defendant Gennaro Tedesco is a music producer, and Defendant Ballroom Blitz Music is his production company. In early 1998, Plaintiff was introduced to De-

---

1. This Court summarily denies Plaintiff's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, because this Court concludes that this action is governed by the Copyright Act. Therefore, this matter is within the exclusive jurisdiction of the federal courts.

2. The Court notes that Defendants also request the award of costs and attorneys' fees for having to remove this case to federal court after Plaintiff improperly commenced this action in state court. Defendants, however, raised this request for the first time in their reply brief in support of their order to show cause. Defendants did not raise this issue in their initial moving brief or in the actual order to show cause submitted to this Court. A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief. *See International Raw Materials, Ltd. v. Stauffer Chem. Co.,* 978 F.2d 1318, 1327 n. 11 (3d Cir.1992) (refusing to consider an issue raised for the first time in a reply brief); *see also Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 204–05 n. 29 (3d Cir.1990) (citing *Wright v. Holbrook,* 794 F.2d 1152, 1156 (6th Cir.1986)); *Kastel v. Winnetka Bd. of Educ., Dist. 36,* 946 F.Supp. 1329, 1335 (N.D.Ill.1996). Therefore, this Court refuses to consider Defendants' request for costs and attorneys' fees.

3. This Court considered this initial hearing as one for a temporary restraining order only.

fendant. Plaintiff was interested in having Defendant produce his latest project, a compact disc ("CD") for the competitive dance music audience focusing on the music from the movie "Titanic". The CD was to be titled "Titantic Passion".[4] Although the parties did not meet face to face, over the next several months, they corresponded through computer e-mails.[5]

The e-mails reflected that the parties discussed a deal whereby Plaintiff would pay Defendant a fee of $15,000 for all the musical arrangements, production, mixing and mastering of the CD. In return, Plaintiff would have the exclusive right to manufacture 5,000 copies of the CD for sale.[6] Plaintiff forwarded to Defendant several checks totaling $7,500 as a down payment for Defendant to start work on the project. On March 8, 1998, Plaintiff traveled to, and spent the day at, Defendant's studio to participate in the production of the CD. In anticipation of the production of the CD, on June 30, 1998, Plaintiff placed an advertisement touting the release of the CD in the program book of the 46th International Modern and Latin–American Championship. The Championship had been scheduled for October 6th, 7th and 8th of 1998. Plaintiff and his wife were scheduled to dance in the competition. Plaintiff also paid for the artwork design cover in anticipation of the production of the CD.

In July 1998, the parties exchanged drafts of a proposed agreement through e-mails. Due to disagreements with various terms of the proposed agreements, the parties' relationship ceased and negotiations ended.

Thereafter, Defendants obtained a certificate of registration from the United States Copyright Office for sound recordings embodied on a CD entitled "Fire Vol. 1".[7] On or about November 16, 1998, at the Ohio Star Ball, DanceSport Competition, Defendants began marketing that CD under the name "Fire Volume 1," which embodied the sound recordings that had been intended for the "Titantic Passion" CD.[8]

On December 11, 1998, Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction in the Superior Court of New Jersey, Hudson County. Plaintiff argued that Defendants breached the parties' contract and that he would be irreparably harmed by Defendants' production and sale of the sound recordings originally intended for the Titantic Passion CD.

The court, analyzing the matter as a contract case, found that Plaintiff established a likelihood of success in showing that the parties had agreed to a contract and that Plaintiff would be irreparably harmed by Defendants' reproduction and

4. For purposes of these motions, this Court assumes that Plaintiff came up with the title "Titantic Passion" for the CD.

5. The record reflects that the parties exchanged e-mails concerning their proposed business relationship from January 17, 1998 to September 11, 1998.

6. Although the parties discussed various other terms of the proposed agreement, this Court does not set forth the negotiations in their entirety because they are not relevant to the Court's disposition of this matter.

7. Defendants assert that the copyright was filed with the Copyright Office on November 6, 1998.

8. The Court notes that initially there was some dispute concerning whether the music embodied on the Fire Volume 1 CD contained

the same music intended for the Titantic Passion CD. However, the Court need not resolve that dispute for purposes of these motions. Pursuant to the December 11, 1998, decision of the Superior Court of New Jersey, Defendants were ordered to turn over the master copy of the sound recordings intended for the Titantic Passion CD to Plaintiff. Presently before the Court are Plaintiff's motion to remand and Defendants' motion for preliminary restraints enjoining Plaintiff from reproducing and selling copies of the music embodied in the master CD turned over to Plaintiff. Plaintiff has not denied Defendants' allegations that the CD Plaintiff intends to market will embody the sound recordings from that master CD. Thus, the Court assumes that Plaintiff intends to market a CD containing music from that master copy.

sale of those sound recordings.[9] Thus, the court granted Plaintiff emergent relief requiring Defendants to turn over the master copy of the sound recordings to Plaintiff and enjoining Defendants from further marketing or selling any CDs embodying those sound recordings. The court required Plaintiff to forward Defendants the remaining $9,100 due and owing under the parties' contract.[10] Although a formal written order was not signed until January 12, 1999, the court noted on the record that its decision was effective as of the date of the hearing, December 11, 1998.

On December 17, 1998, Defendants filed a notice of removal with this Court. Plaintiff does not contest the validity of the filing of the notice of removal. Thereafter on January 14, 1999, Defendants filed the instant motion to (1) vacate the order of the Superior Court of New Jersey, (2) enter a temporary restraining order and (3) enter a preliminary injunction. On January 19, 1999, Plaintiff filed a motion to remand this matter back to the Superior Court of New Jersey.

### DISCUSSION

First, this Court must consider Plaintiff's motion to remand this matter to the Superior Court of New Jersey. Next, this Court will consider Defendants' motion seeking preliminary restraints and an order to vacate the Superior Court of New Jersey's prior order.

#### Motion to Remand

Plaintiff seeks to have this Court remand this matter to the Superior Court of New Jersey, arguing that it is purely a matter of state contract law. On the other hand, Defendants argue that this matter is so intertwined with the underlying copyright issue that it belongs in federal court, the forum with exclusive jurisdiction over copyright cases.

■ An action removed to federal court may be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction ..." 28 U.S.C. § 1447(c). When confronted with a motion to remand, the removing party "bears the burden of proving that jurisdiction exists." *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Id.* (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed sub nom., American Standard v. Steel Valley Auth.*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988)).

Jurisdiction in this case is based on the presentation of a federal question. 28 U.S.C. § 1331. Defendants contend that pursuant to the Copyright Act, 17 U.S.C. § 101 et seq., cases involving copyrights come under the exclusive jurisdiction of the federal courts. Defendants further argue that Plaintiff's state law contract cause of action is preempted by 17 U.S.C. § 301.[11]

9. Although Judge Greenberg decided that the Plaintiff demonstrated a likelihood of success in establishing that the parties had a contract, he expressly held that he could not decide the copyright issues presented because that was "not a function of this court." Order, 1/12/1999 Superior Court of New Jersey (Greenberg, J.S.C.).

10. The Court notes that the parties proposed agreement called for a flat fee payment of $15,000 to Defendants. Plaintiff paid $7,500 up front. The $9,100 due and owing under the parties' proposed agreement included the remaining $7,500 plus $1,600 more because Defendants ran over budget.

11. 17 U.S.C. § 301 provides in relevant part:

(a) On and after January 1, 1978, all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed

Pursuant to § 301 of the Copyright Act, state law causes of action are preempted when they involve the equivalent of the protections afforded copyrightable subject matter by § 106 of the Act. *See*

17 U.S.C. §§ 106, 301(a).[12] First, there is no dispute in this case that the music at issue is copyrightable material.[13] Second, this Court notes that the question whether breach of contract actions are preempted by § 301 is unsettled.[14] However, this

exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

(2) any cause of action arising from undertakings commenced before January 1, 1978;

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106;

(4) State and local landmarks, historic preservation, zoning, or building codes, relating to architectural works protected under section 102(a)(8).

**12.** The exclusive rights afforded copyright holders under 17 U.S.C. § 106 include:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

**13.** 17 U.S.C. § 102 provides in relevant part:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or

device. Works of authorship include the following categories:

♦ ♦ ♦

(7) sound recordings.

**14.** Several courts have held that breach of contract actions are not preempted by § 301 of the Copyright Act. *See ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1453–55 (7th Cir.1996) (holding that § 301 of the Copyright Act does not preempt all state law breach of contract causes of action); *National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 433 (8th Cir.) (same), *cert. denied,* 510 U.S. 861, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993); *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir.1990) (holding that because breach of contract action involves a promise that is in addition to mere reproduction, distribution or display, it is not preempted by § 301 of the Copyright Act); *Acorn Structures, Inc. v. Swantz,* 846 F.2d 923, 926 (4th Cir.1988) (holding that breach of contract action was not preempted by federal copyright law); *Architectronics, Inc. v. Control Systems, Inc.,* 935 F.Supp. 425, 441 (S.D.N.Y.1996) (noting and following "consensus among courts and commentators appears to be that breach of contract claims are qualitatively different from claims for copyright infringement and therefore are not preempted.").

In contrast, other courts have held that breach of contract claims are preempted by § 301. *American Movie Classics Co. v. Turner Entertainment Co.,* 922 F.Supp. 926, 931 (S.D.N.Y.1996) (holding that breach of contract action is preempted by § 301 where action involves rights existing under copyright law); *Wolff v. Institute of Elec. & Elecs. Eng'rs, Inc.,* 768 F.Supp. 66, 69 (S.D.N.Y. 1991) (all breach of contract claims are preempted by § 301); *Smith v. Weinstein,* 578 F.Supp. 1297 (S.D.N.Y.) (holding breach of contract action preempted where the plaintiff was actually claiming copyright infringement), *aff'd,* 738 F.2d 419 (2d Cir.1984).

Plaintiff relies on *National Car Rental, Taquino, Acorn* and *ProCD* in support of his argument that this matter is not preempted by § 301 of the Copyright Act, and, therefore, should be remanded to state court. Plaintiff's reliance on those cases is misplaced. This Court notes that those cases do not stand for

Court need not, and shall not, decide whether all breach of contract claims are preempted by 17 U.S.C. § 301. Although Plaintiff has attempted to characterize its claim as one solely for breach of contract, Plaintiff's pleadings and representations to the Court on the record at oral argument expressly contradict that position.

■ Defendants have satisfied their burden of establishing that this Court has jurisdiction over this matter. Plaintiff's complaint evidences a dispute over the ownership of the copyright to the disputed sound recordings.[15] In Count One of Plaintiff's complaint (¶ 7 of Wherefore Clause), he requests that the Court declare "plaintiff the true and correct owner of the copyright of the music product produced at the request of plaintiff, originally to be entitled *Titantic Passion*." Similarly, in paragraph nine of the same clause, Plaintiff requests that the Court declare "the music product produced at the request of plaintiff, originally to be titled *Titantic Passion* a 'Work for Hire.'" In those two requests for relief, Plaintiff expressly seeks copyright protection and any ancillary or associated rights. Such claims plainly are governed by federal copyright law, and as such, are within the exclusive jurisdiction of the federal courts.

Furthermore, at oral argument, Plaintiff's attorney stated on the record that "there's going to be a serious factual issue whether it's a joint authorship, and, therefore, both parties have a right to the copyright." Tr. Oral Argument 1/29/1999, at 46. Plaintiff's attorney made that statement after earlier telling this Court, in support of his pure contract theory, that his work for hire argument was not his primary argument and that he concedes that there was no evidence that this was a work for hire. *See id.* at 7. Plaintiff's attorney's statements on the record and Plaintiff's complaint convince this Court that this case involves a dispute over who is the rightful owner of the copyright rights to the underlying sound recordings. This matter is governed by the Copyright Act.

Plaintiff's motion to remand is denied.[16] Defendants have established that this matter involves rights arising under the Copyright Act. Those claims are within the exclusive jurisdiction of the federal courts.

### Temporary Restraining Order

Defendants seek a TRO to restrain Plaintiff from marketing or selling CDs embodying the disputed sound recordings. Defendants request that this Court enter a TRO requiring Plaintiff to turn over all copies of the infringing CDs to the Court

the proposition that no breach of contract action would ever be barred by § 301. For example, the Court in *National Car Rental* stated "[b]ecause we decide that the specific contract right [defendant] seeks to enforce is not equivalent to any of the copyright rights, we do not need to decide whether a breach of contract claim based on a wrongful exercise of one of the exclusive copyright rights is preempted." 991 F.2d at 434 n. 6. Furthermore, the claims Plaintiff presents here go to the question of who is the holder of the copyright. Plaintiff's attempts to describe this case merely as one for breach of contract is disingenuous at best.

15. Plaintiff urges this Court to follow the well pleaded complaint rule which provides that this Court must look to the allegations in Plaintiff's complaint, without reference to defenses raised by Defendants, to determine

whether Plaintiff has alleged a federal cause of action. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). This Court has adhered to the well pleaded complaint rule and determined from the face of Plaintiff's complaint that his cause of action sounds in copyright.

16. This Court notes that Plaintiff's motion to remand this matter is accompanied by a request for costs, attorneys' fees and sanctions. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." Because this Court denies Plaintiff's motion to remand this matter, the Court finds no basis for the award of costs, attorneys' fees or sanctions. Thus, Plaintiff's request for costs, attorneys' fees and sanctions is denied.

and thereby maintain the status quo until this litigation is resolved.

"It is fundamental that 'the purpose of a[n] interlocutory injunction is to preserve the status quo to protect the respective rights of the parties pending determination on the merits.'" *Value Group, Inc. v. Mendham Lake Estates, L.P.,* 800 F.Supp. 1228, 1231 (D.N.J.1992) (quoting *Cordis Corp. v. Medtronic, Inc.,* 780 F.2d 991, 994 (Fed.Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986)). This Court must consider four factors in determining whether to grant Defendants' motion for a TRO: "(1) the likelihood of success on the merits after a full hearing; (2) whether the movant will be irreparably injured without the restraint; (3) whether the party to be enjoined will be irreparably injured if the preliminary relief is granted; and (4) whether the public interest will be served by the preliminary relief." *Id.* (citing *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 191–92 (3d Cir.1990)). Applying those four factors to this matter mandates that Defendants' motion seeking a TRO should be granted.

### A. *Likelihood of Success on the Merits*

Defendants must show a likelihood of success on their underlying copyright infringement action. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (citation omitted). The second element, copying, is not at issue here. It

is clear that Plaintiff is planning to reproduce and sell the master CD that Defendants turned over to him.[17] Thus, the only issue to be determined here is whether Defendants are the exclusive owners of the copyright to the sound recordings embodied on the CD.

"Copyright in a work protected under this title vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community For Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (citing 17 U.S.C. § 102). "A plaintiff's duly issued certificate of registration suffices as prima facie evidence of the copyright's validity." *Andrien v. Southern Ocean County Chamber of Commerce,* 927 F.2d 132, 134 (3d Cir.1991) (citing 17 U.S.C. § 410(c)); *see also Value Group,* 800 F.Supp. at 1232. "A defendant's burden of rebutting the presumption varies with the issues bearing on the validity of the copyright." *Andrien,* 927 F.2d at 134.

Here, Defendants have made a prima facie showing of copyright ownership. Defendants have provided this Court with a duly registered certificate of registration from the United States Copyright Office. *See* Aff. Gennaro Tedesco, Ex. A. The certificate of registration lists Gennaro Tedesco as the sole author of the sound recordings. *See id.* Although the certificate is not dated, Defendants assert that the copyright was filed with the Copyright Office on November 6, 1998. Thus, Defen-

---

17. The Court concludes that Plaintiff intends to sell the sound recordings embodied on the master CD that Defendants turned over to Plaintiff pursuant to Judge Greenberg's December 11, 1998, order. The issues presented concern whether Plaintiff has the right to reproduce and market those sound recordings. Plaintiff does not claim that he intends to market a different product. Thus, it is clear that Plaintiff seeks the right to copy and market the Defendants' sound recordings.

There is some question based on Plaintiff's counsel's representation to the Court as to whether Plaintiff has already sold a number of infringing CDs. To the extent that Plaintiff has done so, he is directed to identify, and account for, such sales; calculate the revenue derived from such sales; and hold such revenue in an interest bearing account held by Plaintiff's counsel in counsel's Attorney's Trust Account.

dants have set forth a prima facie showing of copyright ownership.

Plaintiff has the burden of rebutting the presumption arising from Defendant's prima facie showing. Plaintiff makes several arguments in attempt to rebut that presumption. First, Plaintiff argues that he is a joint author of Defendants' work. Second, Plaintiff contends that the sound recordings constituted work for hire. Finally, Plaintiff asserts that he and Defendants had a contract. The alleged contract provided that Plaintiff had an exclusive license to market 5,000 copies of Defendants' sound recordings. This Court finds that all of Plaintiff's arguments are without merit.

First, Plaintiff argues that he is a joint author of Defendants' work. Under the Copyright Act, a joint work "is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201(a). The Court must determine whether Plaintiff would likely be able to show that he is a joint author to Defendants' work.

In *Meltzer v. Zoller*, 520 F.Supp. 847 (D.N.J.1981), the Court considered whether a homeowner could claim copyright ownership of the architectural designs of his newly built home, where the designs had been prepared by an independent architectural agency. There, the plaintiff desired to have a home built in New Jersey. *See id.* at 849. The plaintiff was introduced to the vice-president of a construction company that built private homes. *See id.* The vice-president of that company commissioned an independent architectural agency to begin preparing the designs for the plaintiff's house. *See id.*

The plaintiff initially met with the architect and indicated that he wanted a four bedroom, center hall colonial style house. *See id.* The plaintiff provided the architect with some sketches indicating his desires. *See id.* at 849–50. The final plans incorporated the architect's ideas, the plaintiff's desires and input from the construction company. *See id.* at 850.

After completion of the plaintiff's house, the construction company obtained permission from the plaintiff to show his house as a representation of the construction company's work. *See id.* at 851. After viewing the plaintiff's home, a couple requested that the construction company build them a house similar to the plaintiff's house. *See id.* The same architect prepared plans for that couple similar to the plaintiff's design. *See id.* at 852. Thereafter, the plaintiff filed a complaint alleging copyright infringement of the plans to his house. *See id.*

The court held that the plaintiff had no ownership interest in the copyright to the architectural designs of his house. *See id.* at 855–57. Despite the plaintiff's contributions to the work and submission of sketches, the Court held that the plaintiff could not be considered a joint author to the work because he did not create or prepare the architectural drawings. *See id.* at 857. Concluding that the plaintiff did not have an ownership interest in the work, the Court dismissed his claims of copyright infringement. *See id.* at 857–58.

■ This Court reaches a similar conclusion in this instance. The record reflects that the parties' relationship and negotiations commenced when Plaintiff sent Defendants a cassette to listen to.[18] Plaintiff made suggestions about the number of songs the CD should contain and the direction he thought the songs should be going in.[19] On or about March 8,

---

**18.** An e-mail dated January 17, 1998, from Defendant to Plaintiff stated "[l]istened to the cassette today, excited to get started. Lets [sic] talk about musical direction and produc-

tion." *See* Aff. Gennaro Tedesco, Ex. B, E–Mail 1.

**19.** An e-mail dated January 20, 1998, from Plaintiff to Defendant stated "I think the CD

1998, Plaintiff visited Defendants' recording studio; however, the record does not reflect the exact purpose of the visit. Beyond the initial cassette tape that Defendants listened to, and Plaintiff's suggestions about the CD communicated through e-mails, the record does not reflect any other contributions by Plaintiff to the actual creation or preparation of the disputed sound recordings.[20] Furthermore, with respect to the tape that Defendants listened to, the record does not reflect that Defendants used any of the music from that tape in the production of the sound recordings.

"To reconcile the competing societal interests inherent in the copyright law, copyright protection has been extended only to the particular expression of an idea and not to the idea itself." *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 64 (3d Cir.) (citing *Mazer v. Stein*, 347 U.S. 201, 217–18, 74 S.Ct. 460, 98 L.Ed. 630 (1954)), *cert. denied*, 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193 (1978). In accordance with *Meltzer*, Plaintiff cannot claim joint authorship in the sound recordings merely because he contributed the idea for the work in the form of suggestions and desires. *Meltzer*, 520 F.Supp. at 857 (holding "[t]he ideas and sketches contributed by plaintiff do not sufficiently constitute fixed expressions of ideas; therefore, plaintiff is not the 'creator' of the plans for his house for copyright purposes.").

Moreover, the e-mails exchanged between the parties reflect that Plaintiff agreed that Defendants held the copyright to the sound recordings. In an e-mail dated August 25, 1998, from Defendant to Plaintiff, Defendant stated "it is *totally clear* that all copyrights for the music (including arrangements, recordings, vocals and instrumentation) now and will forever continue to belong to me and BBM, unless I sign an agreement to the contrary.... As the creator of these tracks, I am their owner and copyright holder." Aff. Gennaro Tedesco, Ex. B, E–Mail 28. In response, on August 27, 1998, in an e-mail from Plaintiff to Defendant, Plaintiff stated "[a]s I now read your last E–Note, I have no disagreements with you." *Id.* at E–Mail 29. The evidence in the record leads this Court to conclude that Defendants are the sole creators and preparers of the sound recordings, and, therefore, the sound recordings are not a joint work.

Second, Plaintiff argues that the sound recordings are a work-for-hire. The Copyright Act defines a work for hire as:

(1) work performed by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly

---

should have at least 12 dance tracks and three or four instrumentals, and practice round section." *See* Aff. Gennaro Tedesco, Ex. B, E–Mail 2.

**20.** Juan Sosa, an engineer at Defendant Ballroom Blitz, attests that Plaintiff "apparently made some suggestions to Gennaro as to possible song and arrangement ideas and had sent Gennaro a tape (on which he had re-recorded existing recordings)—but it was Gennaro who decided what to record and how to record it in the studio." Reply Mem. Supp. Defendant's Order to Show Cause, Ex. B, Reply Aff. Juan Sosa, ¶ 6. Furthermore, Sosa attests that Plaintiff only spent "a short

period of time in Gennaro's recording studio and he had no material participation in the recording process nor did he supervise or control our recording sessions in any way." *Id.* at ¶ 7. Similarly, Defendant Tedesco attests that "Plaintiff does not appear in or perform on any of the sound recordings and he did not participate in the creation of the sound recordings. Neither did plaintiff arrange or compose any of the songs included on my sound recordings." Aff. Gennaro Tedesco, ¶ 12. The Court notes that the record does not evidence that Plaintiff participated in any other manner in the preparation of the sound recordings at issue.

agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101. If the work is for hire, "the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b).

■ Plaintiff's argument that the sound recordings were a work for hire is without merit. In this case, the sound recordings, and the relationship between the parties, do not fall under either of the two statutory definitions of a work for hire. Plaintiff did not employ Defendants at the time the sound recordings were created. Plaintiff does not contend that Defendants were his employees when the sound recordings were created. Furthermore, the sound recordings are not a work for hire under the second part of the statute because they do not fit within any of the nine enumerated categories, and because there was no signed written agreement between the parties. *See Community For Creative Non–Violence*, 490 U.S. at 738, 109 S.Ct. 2166 (holding that a statue did not satisfy the terms of § 101(2) because it "does not fit within any of the nine categories of 'specially ordered or commissioned' works enumerated in that subsection, and no written agreement between the parties establishes [the statue] as a work for hire"). The definition does not provide that a sound recording standing alone qualifies as work for hire under § 101(2).

Plaintiff argues that the parties' agreement intended the sound recordings to be a work for hire. This Court, however, notes that the term 'work for hire' was not discussed throughout the negotiations. As discussed above, Defendant Tedesco informed Plaintiff that he intended to retain copyright ownership of the sound recordings. Aff. Gennaro Tedesco, Ex. B, E–Mail 28. More importantly, Plaintiff's attorney stated at oral argument that his

work for hire argument was not his primary argument and that he concedes that there was no evidence that this was a work for hire. Tr. Oral Argument 1/29/1999, at 7. In light of the foregoing, this Court finds that Plaintiff has not presented any evidence that the sound recordings were a work for hire.

■ Finally, Plaintiff asserts that Defendant granted him an exclusive license to market 5,000 copies of the sound recordings. "The owner of a copyright can transfer ownership of the copyright by selling it or by exclusively licensing it." *MacLean Assocs., Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir.1991). "Exclusive licenses must, however, be in writing." *Id.* (citing 17 U.S.C. § 204(a)). Under 17 U.S.C. § 204(a), a transfer of copyright ownership must be made "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

Plaintiff has not provided this Court with evidence of a signed writing granting him an exclusive license to market the sound recordings. Instead, Plaintiff argues that the parties' exchange of e-mails evidences the agreement. The exchange of e-mails, however, does not satisfy the statutory requirement of a written instrument signed by the Defendants. Thus, Defendants could not have transferred ownership of the sound recordings to Plaintiff through an exclusive license.

For the reasons discussed, this Court concludes that Defendants have established a likelihood of success in establishing that they are the owners of the copyright to the sound recordings. Furthermore, because there is no dispute that Plaintiff is planning to reproduce and market the sound recordings, Defendants have shown a likelihood of success of establishing copying. Thus, Defendants have shown that they are likely to prevail in this copyright infringement action.

### B. *Irreparable Harm*

■ Although Defendants have the burden of showing irreparable injury, "[i]n this circuit, a prima facie showing of copyright infringement creates a rebuttable presumption of irreparable harm." *Educational Testing Servs. v. Katzman*, 793 F.2d 533, 543–44 (3d Cir.1986); *Value Group*, 800 F.Supp. at 1234. Defendants, having established a prima facie case of copyright infringement and having shown a likelihood of success on the merits, enjoy the presumption that they will suffer irreparable harm if this Court does not award injunctive relief. This Court is satisfied that Defendants will actually suffer irreparable injury if Plaintiff is permitted to market and sell infringing copies of Defendants' sound recordings.

Defendants invested substantial time, effort and money into creating the sound recordings. Defendants' sound recordings were intended to be sold to a small DanceSport market. Defendants' profits and reputation would be irreparably damaged if this Court were to permit Plaintiff to sell infringing copies of the Defendants' sound recordings. Furthermore, Defendants would lose the benefit of all of the exclusive statutory rights associated with copyright ownership of the sound recordings. "Given the presumption of irreparable harm, the possibility of actual injury and the substantial investment expended, the [Defendants] have satisfied the requirement of irreparable injury." *Value Group*, 800 F.Supp. at 1234.

On the other hand, Plaintiff has not shown that he would be irreparably injured by this Court's entry of a TRO. Having failed to show that he is likely to prevail on the issue of copyright ownership, Plaintiff has not demonstrated that he has any interest in the sound recordings. This Court concludes that the entry of injunctive relief maintaining the status quo pending a final resolution of this litigation will protect any interests that either party might have in the sound recordings.

### C. *Public Interest*

■ The public interest will be served in this instance by the issuance of a TRO. First, there is a compelling public interest in ensuring that the exclusive rights of copyright ownership are protected. Second, there is a substantial public interest in avoiding customer confusion. Finally, "[t]he public interest will be served by upholding the copyright protection, and preventing the pirating of creative energies and resources that are invested in protected works." *Value Group*, 800 F.Supp. at 1234 (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984)). In contrast, there clearly is no public interest in permitting the sale by Plaintiff of infringing copies of Defendants' sound recordings.

### D. *Balance of the Hardships*

Plaintiff urges that this Court balance the hardships in considering whether to grant the TRO. However, "[a] court should not consider a balancing of hardships as a determining factor in granting injunctive relief in a copyright matter." *Value Group*, 800 F.Supp. at 1234–35 (citing *Apple Computer*, 714 F.2d at 1255). Such a consideration would give an infringing party the opportunity to arrange its business around intended infringement. *Id.* at 1235.

### Plaintiff's Defenses

■ Plaintiff contends that Defendants' request for a TRO should be denied because they have come before this Court with unclean hands.[21] "To prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith

---

21. The doctrine of unclean hands is an equitable defense that is raised to bar a party from obtaining equitable relief when the party seeking relief has engaged in some wrongdoing. *See Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598 (3d Cir.), *cert. denied*, 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817 (1972).

on the part of the plaintiff." *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 377 n. 7 (3d Cir.1992). Plaintiff has not presented any evidence showing that Defendants engaged in fraud, unconscionability, or bad faith. As such, this Court rejects Plaintiff's defense.

Next, Plaintiff argues that Defendants' request for a TRO should be denied because they committed a fraud on the Copyright Office. Plaintiff asserts that Defendants wrongfully obtained copyright registration without notifying the Copyright Office that Plaintiff was a joint author to the sound recordings. As discussed above, this Court finds that Plaintiff is not likely to be able to show that he is a joint author of the sound recordings. As such, this Court finds that Defendants did not commit a fraud on the Copyright Office by neglecting to inform the Office that Plaintiff allegedly was a joint author to the sound recordings.

This Court rejects Plaintiff's defenses because Plaintiff has not provided evidence substantiating either of the two asserted defenses.

### *Motion to Vacate*

■ The Superior Court of New Jersey (Greenberg, J.S.C.) rendered an oral decision entering a preliminary injunction on December 11, 1998, which was memorialized in writing on January 12, 1999. Having found that Plaintiff demonstrated a likelihood of establishing a contract, Judge Greenberg ordered Defendant to turn over the master copy of the sound recordings to Plaintiff. In addition, the court ordered Plaintiff to forward $9,100 to Defendants in accordance with what the court believed to be the parties' agreement.[22] Defendants seek to have this Court vacate that order, and instead, enter a TRO requiring Plaintiff to turn over the master copy and all infringing copies of the sound recordings to the Court. Furthermore, Defen-

dants want this Court to enjoin Plaintiff from marketing or selling any infringing copies of the sound recordings or using any material copied from, and substantially similar to, their sound recordings.

"Whenever any action is removed from a State court to a district court of the United States ... [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. After removal, the district court "takes the case up where the State court left it off." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 436, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) (quoting *Duncan v. Gegan,* 101 U.S. 810, 812, 11 Otto 810, 25 L.Ed. 875 (1879)). "[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal. Section 1450 implies as much by recognizing the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal." *Id.* at 437, 94 S.Ct. 1113.

Applying those considerations to this matter, this Court finds that the preliminary injunction entered by the Superior Court of New Jersey should be vacated. The Superior Court of New Jersey expressly stated that it was not deciding any copyright issues. *See* Order, 1/12/1999, Superior Court of New Jersey, ¶ 6. Furthermore, the Superior Court of New Jersey noted on the record at oral argument that it was deciding the case as a contract action and not considering copyright law. *See* Tr. Oral Argument 12/11/1998, at 2. This court has decided that this case sounds in copyright and not contract law. The Superior Court of New Jersey did not consider the applicable law governing this action when deciding whether to enter the

---

22. Defendants have represented to this Court that the $9,100 paid to them by Plaintiff in accordance with Judge Greenberg's order has remained in escrow.

preliminary injunction. After considering the applicable copyright law and finding that the Superior Court of New Jersey lacked subject matter jurisdiction, this Court holds that the preliminary injunction entered by the Superior Court of New Jersey is vacated.

### *CONCLUSION*

For the reasons discussed, Plaintiff's motion to remand this matter to the Superior Court of New Jersey is denied. Furthermore, this Court finds that Defendants are entitled to the entry of a TRO, enjoining Plaintiff from copying, marketing or selling the disputed sound recordings. In addition, this Court orders that the preliminary injunction entered by the Superior Court of New Jersey is vacated.

### ORDER

This matter having come before the Court on Plaintiff Corky Ballas' ("Plaintiff") motion to remand this matter to the Superior Court of New Jersey or alternatively to dismiss pursuant to Fed.R.Civ.P. 12(b)(1); and Defendants Gennaro Tedesco and Ballroom Blitz Music (collectively "Defendants") having filed a motion seeking (1) a temporary restraining order, (2) a preliminary injunction and (3) to vacate the December 11, 1998, order of the Superior Court of New Jersey; and this Court having heard oral argument on those motions on January 29, 1999; and this Court having considered the submissions of the parties; and for good cause appearing;

IT IS on this 5th day of March, 1999,

ORDERED that Plaintiff's motion to remand this matter to the Superior Court of New Jersey be and hereby is DENIED; and

IT IS FURTHER ORDERED that Plaintiff's motion for costs and attorneys' fees be and hereby is DENIED; and

IT IS FURTHER ORDERED that Plaintiff's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) be and hereby is DENIED; and

IT IS FURTHER ORDERED that Defendants' motion for a temporary restraining order be and hereby is GRANTED; and

IT IS FURTHER ORDERED that the December 11, 1998, order of the Superior Court of New Jersey, which is further embodied in a January 12, 1999 written order, be and hereby is VACATED; and

IT IS FURTHER ORDERED that Plaintiff and his agents, affiliates, licensees and distributors are hereby enjoined from manufacturing, distributing, advertising, importing, selling or shipping any copy of, or derivative work containing Defendants' copyrighted sound recordings in any format and under any title including, but not limited to, the title "Titantic Passion"; and

IT IS FURTHER ORDERED that Plaintiff and his agents, affiliates, licensees and distributors are hereby enjoined from using any material copied from, and substantially similar to, Defendants' copyrighted sound recordings in any of Plaintiff's advertisements or its products; and

IT IS FURTHER ORDERED that under 17 U.S.C. §§ 602, 603, Plaintiff is prohibited from importation of any copies of any product that infringes Defendants' copyrighted sound recordings (in all recorded formats); and

IT IS FURTHER ORDERED that the United States Marshal for this District and/or representatives of Plaintiff are hereby authorized to seize and impound any and all (1) the master copy of Defendants' musical recordings that were turned over to Plaintiff pursuant to the Superior Court of New Jersey's order; (2) copies of Plaintiff's products that infringe Defendants' copyrighted sound recordings, including, but not limited to, the album entitled "Titantic Passion" (in all recorded formats); (3) all records, documents and papers that reflect the manufacture, import, export, purchase, sale, transfer and/or distribution of the infringing merchandise that Plaintiff has sold or is holding for sale and (4) all payment, if any, in Plaintiff's possession from the sale of the infringing products; and

IT IS FURTHER ORDERED that Plaintiff provide an accounting to this Court of all sales of infringing copies of Defendants' sound recordings to date and certify in an affidavit the amount of gross revenue derived from those sales; and

IT IS FURTHER ORDERED that representatives of Defendants are authorized to seize and hold in escrow the $9,100 that Plaintiff paid Defendants pursuant to the Superior Court of New Jersey's order; and

IT IS FURTHER ORDERED that Defendants post a bond in the amount of $25,000 within seven (7) days of the entry of this Order with the Clerk of the Court in accordance with Fed.R.Civ.P. 65(c); and

IT IS FURTHER ORDERED that the parties attend a status conference to be conducted by this Court on March 22, 1999, at 10:00 am; and

IT IS FURTHER ORDERED that a copy of this Order be served on all parties within seven (7) days of the date of this Order.